# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAMILO ANTONIO GARCIA VALERIO,<br><br>On behalf of himself and all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC, XPO LAST MILE, INC., MIKE SKIRVIN, KARL MEYER, ABC CORPS. 1-10 and JANE & JOHN DOES 1-10,<br><br>Defendants. | Civil Action No.:<br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

## COMPLAINT – CLASS ACTION

1.  Plaintiff Camilo Antonio Garcia Valerio ("Plaintiff"), on behalf of himself and all other similarly situated persons, brings this class action lawsuit against Defendants Bob's Discount Furniture, LLC, XPO Last Mile, Inc., Mike Skirvin, Karl Meyer, ABC Corps. 1-10 and Jane and John Does 1-10, to recover damages under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. (the "NJWHL"), the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. (the "NJWPL")[1] and the doctrine of unjust enrichment for unpaid and/or underpaid overtime wages and unlawful deductions withheld or diverted from their wages.

---

[1] Plaintiff and the putative class members' NJWHL and NJWPL claims are asserted to the full extent and reach of those laws including, but not limited to, the extent to which those laws are further implemented and bolstered by the New Jersey Wage Collection Law, N.J.S.A. 34:11-57, et seq. (the "NJWCL").

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1332(d).

3. Venue is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. Plaintiff made a number of deliveries at the direction and control of the Defendants throughout the State of New Jersey out of a base of operations located within the State of New Jersey.

## PARTIES

4. Plaintiff Camilo Antonio Garcia Valerio is a natural person and a citizen of the Commonwealth of Pennsylvania and has been employed by Defendants since December of 2019 in the Borough of Swedesboro in the County of Gloucester in the State of New Jersey.

5. Defendant Bob's Discount Furniture, LLC ("BOB'S"), is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with corporate headquarters located at 428 Tolland Turnpike in the Town of Manchester, County of Hartford and State of Connecticut.

6. Defendant BOB'S is in the business of selling furniture and goods to customers and operates stores and locations in the Northeastern and Mid-Atlantic regions of the United States.

7. BOB'S business includes ensuring, directing and overseeing that its furniture or goods are delivered to its customers in accordance with its Standard Operating Procedures ("SOPs") and Delivery Operation Requirements ("DORs").

8. Defendant XPO Last Mile, Inc. ("XPO LM") is a corporation organized and existing under the laws of the State of Georgia with corporate headquarters located at 1851 West Oak Parkway, Suite 100, in the City of Marietta, County of Cobb and State of Georgia.

9. Defendant XPO LM is a third-party logistics company that operates as an authorized freight forwarder for its clients, including retailers and distributors of furniture, such as Defendant BOB'S in this case.

10. To effectuate its services for BOB'S, XPO LM enters into delivery service agreements ("DSAs") with entities and sole proprietorships that it terms "motor carriers", "contract carriers" or "service providers" (referred to hereinafter as "Motor Carriers" for the ease of reference).

11. These Motor Carriers, who own or rent delivery trucks, in turn pay individuals, colloquially known as "drivers" or "helpers", to operate their trucks and complete deliveries of BOB'S furniture and goods in accordance with BOB'S SOPs and DORs.

12. "Drivers" drive the trucks that deliver BOB'S furniture and goods from Defendants' facilities or warehouses to BOB'S customers. "Helpers" travel with the drivers to assist with deliveries at Defendants' facilities or warehouses, on the road and at customer homes.

13. At all times relevant herein, BOB'S and XPO LM both operated out of and/or utilized a distribution facility located at 2185 High Hill Road in the Borough of Swedesboro, County of Gloucester and State of New Jersey (the "Swedesboro Facility").

14. At all relevant times herein, Defendant XPO LM provided its management and logistic services to Defendant BOB'S at and out of the Swedesboro Facility.

15. One of the Motor Carriers XPO LM entered into a DSA with at the Swedesboro Facility is an entity believed to be called "United Group Imports, Inc."

16. United Group Imports, Inc. operates under the United States Department of Transportation, Federal Motor Carrier Safety Administration license/USDOT number 2408110. For all purposes herein, the term "United" shall refer collectively to United Group Imports, Inc.,

any and all other persons or entities that operate or have operated under USDOT number 2408110, and any and all predecessor or successor entities of United Group Imports, Inc.

17. United paid a number of drivers and helpers, at least more than forty (40), to complete deliveries of BOB'S furniture and goods from the Swedesboro Facility utilizing delivery trucks that United owned, rented or otherwise operated.

18. The Class of similarly situated Plaintiffs is defined as:

> All individuals that were based out of the Swedesboro Facility that performed truck driving and/or helper functions for Bob's Discount Furniture, LLC and XPO Last Mile, Inc., in or out of trucks owned, rented or otherwise operated by the motor carrier, United, from **July 9, 2014** to the date of Judgment in this action. (Hereinafter the "Class Members").

19. Defendant BOB'S was at all relevant times herein, an employer of the Plaintiff and the Class Members as defined by the NJWHL.

20. Alternatively, Defendant BOB'S was at all relevant times herein, a "client employer", as defined by the New Jersey Wage-Theft Act, and is jointly and severally liable for the New Jersey wage claims asserted herein by Plaintiff and the Class Members. See N.J.S.A. 34:11-58.2.

21. Defendant XPO LM was at all relevant times herein, an employer of the Plaintiff and the Class Members as defined by the NJWHL.

22. Alternatively, Defendant XPO LM was at all relevant times herein, a "client employer" and/or "labor contractor", as defined by the New Jersey Wage-Theft Act, and is jointly and severally liable for the New Jersey wage claims asserted herein by Plaintiff and the Class Members. See N.J.S.A. 34:11-58.2.

23. Defendant Mike Skirvin ("Skirvin") is a natural person whose citizenship and residency are currently unknown to Plaintiff.

24. Defendant Skirvin is Defendant BOB'S Chief Executive Officer and has at all relevant times hereto "acted on behalf" of BOB'S with regard to its compliance with the NJWHL, NJWPL, NJWCL and misclassification of Plaintiff and the Class Members as nonemployees thereunder.

25. Defendant Skirvin is therefore personally or individually liable for Plaintiff and the Class Members' claims for damages under the NJWHL and NJWPL. See N.J.S.A. 34:11-58.2(c).

26. Defendant Karl Meyer ("Meyer") is a natural person whose citizenship and residency are currently unknown to Plaintiff.

27. Defendant Meyer is Defendant XPO LM's Chief Executive Officer and has at all relevant times hereto "acted on behalf" of XP OLM with regard to its compliance with the NJWHL, NJWPL, NJWCL and misclassification of Plaintiff and the Class Members as nonemployees thereunder.

28. Defendant Meyer is therefore personally or individually liable for Plaintiff and the Class Members' claims for damages under the NJWHL and NJWPL. See N.J.S.A. 34:11-58.2(c).

29. Defendants ABC CORPS. 1-10 and/or JANE and JOHN DOES 1-10 are currently unknown entities and/or natural persons, designated by fictitious names herein, who may also be liable to the Plaintiff and the Class Members in this matter.

## SPECIFIC ALLEGATIONS

30. The Plaintiff has and does currently work as a truck driver delivering BOB'S furniture and goods from the Swedesboro Facility to BOB'S various customer locations.

31. The Plaintiff and all Class Members were assigned to perform non-exempt tasks as truck Drivers and/or Helpers for BOB'S and were based out of the Swedesboro Facility.

32. The Plaintiff and all Class Members began and ended each workday at the Swedesboro Facility.

33. BOB'S entered into business relationships with other entities, including XPO LM, John and Jane Does 1-10 and ABC Corps. 1-10, to conceal the fact that it had an employer-employee relationship with the Plaintiff and all Class Members.

34. At some time before or during the operation of the Swedesboro Facility, BOB'S and XPO LM entered into one or more Master Agreements (the "MAs"), to govern BOB'S delivery operations out of the Swedesboro Facility.

35. The MAs contains or references BOB'S SOPs and DORs which must be followed to complete deliveries of BOB'S furniture and goods out of the Swedesboro Facility.

36. BOB'S SOPs and DORs are passed along from BOB'S to XPO LM who, in turn, passes along the operational requirements to the Motor Carriers who sign DSAs and the drivers and helpers paid by the Motor Carriers.

37. Specific to this case, the MAs require XPO LM to perform deliveries in accordance with BOB'S SOPs and DORs and, in turn, XPO LM requires United and its drivers and helpers to perform deliveries in accordance with BOB'S SOPs and DORs and any additional requirements that XPO LM's DSA with "United" may mandate.

38. The terms of the MAs, SOPs, DORs and DSA with United manifest and exhibit a high level of control and direction by BOB'S and XPO LM as a matter of contract over the performance of the delivery services performed by the Plaintiff and Class Members.

39. BOB'S and XPO LM also exert a high level of control and direction as a matter of fact over the performance of the delivery services performed by the Plaintiff and Class Members.

40. BOB'S controls the manner and means in which the Plaintiff and all Class Members perform their duties. Specifically, the Plaintiff and all Class Members all report to work at BOB'S Swedesboro Facility; BOB'S requires background checks and drug screening prior to the

commencement of work; BOB'S requires that all deliveries are made with tracking devices that BOB'S then uses to score the performance of the Plaintiff and Class Members; BOB'S monitors the work performance of the Plaintiff and Class Members and assigns work according to that performance; BOB'S personnel point out areas of work improvement directly to Class Members from time to time; Class Members must communicate with BOB'S employees while delivering their routes during the workday, Class Members must handle paperwork and invoices with BOB'S customers; Class Members are required to wear a BOB'S embroidered uniform; BOB'S requires deliveries be made by two-person teams and determines which days of the week deliveries are to be made; BOB'S provides a customer care department to report problems and issues that arise during the workday; BOB'S requires the installation and assembly of its merchandise; BOB'S requires Class Members to confirm deliveries; BOB'S assigns daily truck routes and time frames for making deliveries; BOB'S personnel inspects the Swedesboro Facility to oversee the delivery operation; and BOB'S maintains the authority to reprimand and terminate Plaintiff and all Class Members.

41.     XPO LM also controls the manner and means in which the Plaintiff and all Class Members perform their delivery services. Specifically, XPO LM enforces all of BOB'S SOPs and DORs at the Swedesboro Facility; XPO LM also requires background checks and drug screening prior to the commencement of work; XPO LM also monitors the work performance of the Plaintiff and Class Members and assigns work according to that performance; XPO LM conducts morning standup meetings to: (i) discuss worker performance, (ii) provide instruction for performing deliveries, (iii) provide instruction for performing product assembly, (iv) provide instruction for performing product installation, (v) point out areas of delivery improvement; provide instruction for providing good quality service, and (vi) enforce BOB'S uniform policy; XPO LM provides

dispatch services at the Swedesboro Facility to assist with issues and problems that arise while deliveries are being made; XPO LM personnel screen drivers and helpers before they can begin work for a Motor Carrier; XPO LM personnel conducts audits and ride-behinds of the drivers and helpers to monitor an gauge performance; and XPO LM also has the authority to reprimand and terminate the Plaintiffs and all Class Members.

42. The Plaintiff and all Class Members' delivery services were performed within the usual course of Defendants' businesses, specifically, to complete delivery BOB'S furniture and goods to BOB'S customers.

43. The Plaintiff and all Class Members' delivery services were performed within all of the places of the Defendants' businesses, specifically, at the Swedesboro Facility and at BOB'S customers' homes.

44. The Plaintiff and all Class Members did not operate independently established businesses.

45. The Plaintiff and all Class Members are not independent contractors as defined by N.J.S.A. 43:21-19(i)(6)(A)(B)(C), the test adopted and applied to "employment status" disputes under the NJWHL and NJWPL by the Supreme Court of New Jersey in Hargrove v. Sleepy's, LLC, 220 N.J. 289 (N.J. 2015).

46. United was simply used as a tool or mechanism to surreptitiously attempt to insulate BOB'S and XPO LM from liability under New Jersey's wage laws and otherwise circumvent their legal obligations thereunder.

47. Indeed, upon information and belief, United Group Imports, Inc. has not even been licensed to conduct business within the State of New Jersey since the State of New Jersey, Division of Revenue and Enterprise Services ("NJDOR") suspended its license on September 16, 2016.

48. Upon further belief, the NJDOR has only recently began procedures related to United Group Imports, Inc.'s reinstatement to do business within this State.

49. The willingness of BOB'S and XPO LM to readily discharge their legal duties under New Jersey's wage laws upon an entity not licensed to do business further supports awards of "liquidated damages" as provided for under the NJWHL and NJWPL.

50. The Plaintiff and all Class Members are not exempt under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq.

51. The Plaintiff and all Class Members routinely work far in excess of forty (40) hours per week for Defendants and are not paid 1.5 times their hourly rate or 1.5 times the minimum wage rate when they work over forty (40) hours per week.

52. Plaintiff and all Class Members are paid on a daily, piecemeal basis of $200.00 per day for drivers and $150.00 per day for helpers, regardless of the amount of hours they actually work in excess of forty (40) hours per week.

53. Defendants' ongoing uniform illegal policy of failing to pay Class Members for all time worked has resulted in Class Members being denied substantial legally required compensation and/or overtime payments given that Class Members routinely work in excess of forty hours per week.

54. In addition, the wages earned by the Plaintiff and other Class Members are reduced to account for various deductions, charges and/or expenses that do not benefit the Plaintiffs or other Class Members. For example, the Plaintiff, like other Class Members, is subjected to deductions, charges and/or expenses to cover the cost of the substandard housing of dozens of workers in a single house in a manner which is inconsistent with N.J.A.C. 12:56-8.1 to -8.8

(NJDOLWD regulations governing lawful "fair value" lodging credits under the wage laws) and therefore amounts to an unlawful deduction in violation of the NJWPL.

55. Beginning in or around February of 2020, United, by and through Defendants BOB'S and XPO LM, began issuing Plaintiff and the Class Members alleged "Earnings Summar[ies]" (the "New Statements").

56. The New Statements are a farce being utilized by an entity that is not even licensed to do business in the State of New Jersey to further conceal the Defendants' violations of New Jersey law.

57. Plaintiff and the Class Members do not clock-in or clock-out of the Swedesboro Facility on workdays so their actual hours worked cannot and are not being tracked in a manner that provides a "complete, true and accurate record." See N.J.A.C. 12:56-4.2.

58. Even if the Plaintiff and Class Members' time spent making deliveries is being accurately tracked by BOB'S electronic tracking devices, the tracking devices are not reporting the hours spent each workday by the Plaintiff and all Class Members loading and unloading their trucks before and after making their deliveries.

59. The hours being reflected on the New Statements are entirely fictional and are wildly underreporting the amount of hours Plaintiff and all of the Class Members are actually working within and out of the Swedesboro Facility.

## CLASS ACTION ALLEGATIONS

60. The Plaintiffs bring this lawsuit as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all other individuals who, at any time after June 2014, performed delivery and other transportation related services in the State of New Jersey for Defendants.

61. Class action treatment is appropriate because, as summarized in Paragraphs 62 to 68 below, all of Rule 23's requirements are satisfied.

62. The Class is so numerous that joinder of all Class Members is impracticable.

63. The Plaintiff is a Class Member, his claims are typical of the claims of other Class Members and he has no interests that are antagonistic to or in conflict with the interests of other Class Members.

64. The Plaintiff will fairly and adequately represent the Class Members and their interests, and he has retained competent and experienced counsel who will effectively represent the Class Members' interests.

65. Questions of law and fact are common to all Class Members.

66. Common questions of law and fact predominate over questions affecting only individual Class Members. These common questions include:

   a. Whether the Class Members were misclassified and should have been treated as "employees" by the Defendants for purposes of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq.;

   b. Whether the Class Members routinely worked in excess of forty (40) hours per week for the Defendants;

   c. Whether the Class Members were compensated with premium overtime pay for all hours worked in excess of forty (40) hours per week; and

   d. Whether this conduct violates the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq.

   e. Whether the Class Members had the costs of housing withheld from their wages in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq.

67. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

68. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications. Prosecution as a class action will also eliminate the possibility of repetitious litigation.

## **COUNT ONE**

### **(NEW JERSEY WAGE AND HOUR LAW)**

69. Plaintiff reasserts Paragraphs 1-68 as if set forth at length herein.

70. Defendants' conduct against the Plaintiff and the Class Members violates the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq., by failing to compensate the Plaintiff and the Class Members for all hours worked, and not paying overtime when the Plaintiff and the Class Members worked over 40 hours per week.

71. As a result of Defendants' conduct, the Plaintiff and the Class Members have endured significant economic damages.

## **COUNT TWO**

### **(NEW JERSEY WAGE PAYMENT LAW)**

72. Plaintiff reasserts Paragraphs 1-71 as if set forth at length herein.

73. Defendants' conduct against the Plaintiff and the Class Members violates the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq., by reducing the wages paid to the Plaintiff and the Class Members to account for various deductions, charges and/or expenses that do not benefit the Plaintiff or other Class Members.

74. As a result of Defendants' conduct, the Plaintiff and the Class Members have endured significant economic damages.

## **COUNT THREE**

### **(UNJUST ENRICHMENT)**

75. Plaintiff reasserts Paragraphs 1-74 as if set forth at length herein.

76. Defendants have been financially enriched by failing to the Plaintiff and the other Class Members the appropriate overtime rate for all hours they worked in excess of forty (40) hours per week and for unlawfully withholding unauthorized deductions from their wages.

77. The financial enrichment enjoyed by Defendants has come at the expense of the Plaintiff and the other Class Members, all of whom have borne the unpaid and/or underpaid wages.

78. It is against equity and good conscience to permit Defendants to retain such unpaid and/or underpaid wages.

79. Defendants should be required to reimburse the Plaintiff and all other Class Members for such unpaid and/or underpaid wages under the doctrine of unjust enrichment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Camilo Antonio Garcia Valerio seeks the following relief on behalf of himself and the other Class Members:

a. Certify a class action pursuant Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff and his counsel to represent the Class;

b. Declare and find that the Defendants violated the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq.;

c. Declare and find that the Defendants violated the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq.;

d. Award compensatory damages, including all unpaid and/or underpaid wages, in an amount according to proof;

e. Award liquidated damages in an amount equal to 200 percent of the amount of the unpaid or underpaid wages;

f. Award all costs, expenses and attorney's fees, with appropriate enhancement, incurred in prosecuting this claim;

g. Award pre-judgment and post-judgment interest at the highest rates allowed by law;

h. Injunctive relief in the form of an order directing Defendants to comply with New Jersey law; and

i. Such other relief as in law or equity may pertain.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial as to all issues so triable.

Dated: July 9, 2020    Respectfully submitted,
East Windsor, New Jersey

By:    **s/ *Ravi Sattiraju***
**SATTIRAJU & THARNEY, LLP**
Ravi Sattiraju, Esq. (N.J. No. 035251998)
Anthony S. Almeida, Esq. (N.J. No. 024552005)
50 Millstone Road
Building 300, Suite 202
East Windsor, New Jersey 08520
Tel: (609) 469-2110
Fax: (609) 228-5649
Emails: rsattiraju@s-tlawfirm.com
         aalmeida@s-tlawfirm.com

*Attorneys for the Plaintiff and all other similarly situated persons*.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

The undersigned hereby certifies under the penalty of perjury that this matter in controversy is *not* the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. The undersigned nevertheless discloses that there exists a similar action captioned Espinal, *et al*. v. Bob's Discount Furniture, LLC, *et al*., Civil Action No. 2:17-cv-02854-JMV-JBC, pending within this District before the Honorable John Michael Vazquez, U.S.D.J. However, that action arises out of entirely separate facilities located in Edison and Carteret, New Jersey, and covers a distinct and separate class of workers.

        **s/ *Ravi Sattiraju***
    RAVI SATTIRAJU, ESQ.

Date:   July 9, 2020
        East Windsor, New Jersey